*376
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This libel action arises out of the past decade of insider trading scandals and Wall Street intrigue, when the media was filled with reports of arbitrageur Ivan Boesky’s stock schemes, investment banker Michael Milken’s deployment of junk bonds in deals for Drexel Burnham Lambert, and "the country’s most expensive, aggressive lawyers [who] maneuvered frantically on behalf of their powerful clients.” So advertised the dustcover of "Den of Thieves,” a book written by defendant James B. Stewart, edited by defendant Laurie P. Cohen, and published in 1991 by defendant Simon & Schuster. Spanning nearly 450 pages, the book is in two parts — "Above the Law,” detailing the alleged intricate scheme of illegal insider trading crafted by Boesky, Milken and other Wall Street figures, and "The Chase,” describing how law enforcement officials discovered and prosecuted them.
 

 By this action, plaintiff Michael F. Armstrong, a criminal defense attorney who represented individuals involved in these events, now seeks damages for an allegedly defamatory paragraph about him.
 

 The following facts are drawn from the verified amended complaint and its ten exhibits.
 
 [1]
 
 As Armstrong alleges, he primarily represented Michael Milken’s brother, Lowell, an attorney who worked for Drexel on Michael’s partnership ventures and tax issues. In their corporate dealings, the Milkens were represented by a small in-house firm which included Craig M. Cogut, who mainly worked on partnership issues for Lowell. In 1986, Boesky pleaded guilty to a securities felony and agreed to cooperate with Federal prosecutors in the investigation of the Wall Street community. Lowell Milken and other employees were subpoenaed to appear be
 
 *377
 
 fore both a Federal Grand Jury and the Securities and Exchange Commission. Cogut then hired Armstrong to represent him pursuant to a retainer letter which stated that should a conflict of interest arise, Cogut would obtain other counsel as Armstrong would continue to represent Lowell.
 

 After learning that Cogut recalled overhearing a key 1986 telephone conversation between Lowell and Boesky’s auditors that bore on an alleged improper transfer of funds and was favorable to Lowell, Armstrong conferred with Cogut. Based on their discussions, as well as subsequent memoranda prepared by Armstrong and annotated by Cogut, Armstrong drew up an affidavit for Cogut and submitted it to him. The intention was to send Cogut’s affidavit concerning the telephone conversation to the U.S. Attorney on behalf of Lowell, who had become a target of the investigation, in order to convince the prosecutors that Lowell should not be indicted. Cogut consulted about the affidavit with attorney Thomas Fitzpatrick (recommended by Armstrong), and separately retained his own counsel (Theodore Miller and Thomas Pollack), though Armstrong continued to represent him on routine matters related to the investigation.
 

 After several revisions, on September 28, 1988, Cogut signed an affidavit which, according to the complaint, contained essentially the same facts as the original affidavit Armstrong had prepared.
 
 [2]
 
 The next day, Cogut sent the signed affidavit to Armstrong with a cover letter authorizing him to present the affidavit to the U.S. Attorney "based upon your assurances that you will place my affidavit in an appropriate context by making it clear to the U.S. Attorney’s Office when you provide the affidavit that I do not recall whether I was present during the entire conversation or all of the conversations between Lowell Milken and the accountants, and that my memory as to the events of that day are necessarily vague.”
 

 Armstrong transmitted Cogut’s affidavit to the U.S. Attorney with a 24-page submission dated October 18, 1988, and signed by Lord Day
 
 &
 
 Lord (Armstrong’s law firm). The submission stated that "Mr. Cogut recalls being present when Lowell Milken spoke to the accountants,” that "Craig Cogut believes that he was present during all of the 'substantive discussions,’ ” that "Cogut’s careful qualifications of his two and a half year old recollections should not be used to dis
 
 *378
 
 count his testimony,” and that the "most significant thing about Craig Cogut is the fact that he was there.”
 

 In "Den of Thieves,” these events were portrayed in the following paragraph on pages 396-397:
 
 [3]
 

 "After news of the Boesky agreement, Cogut had agreed to be represented by New York criminal lawyer Michael Armstrong, Lowell’s lawyer. But like Maultasch and Dahl,[
 
 4
 
 ] Cogut had become uneasy about his attorney’s possible conflict of interest [the differing needs of his attorney’s several clients], Lowell’s interests were too close to Mike Milken’s. Cogut’s concern had increased when, earlier in 1988, Armstrong came to him with an affidavit he had prepared for Cogut to sign. Its intent had been to exonerate Lowell, based on assertions of fact by Cogut. Cogut read it over and had only one problem: the facts weren’t true. He angrily refused to sign, and began looking for new lawyers, eventually hiring Los Angeles lawyers Tom Pollack and Ted Miller. [In September 1988 Cogut submitted an affidavit.]”
 

 This paragraph is the focus of the present litigation.
 

 Prior to the publication of "Den of Thieves,” Armstrong obtained a copy of the manuscript and wrote to Simon & Schuster that the book contained false statements about his client Lowell and himself. Attorneys for Simon & Schuster met with Armstrong, who primarily pressed the references to Lowell Milken that he claimed were false but also discussed the passage at issue and later presented them with a written list of 21 claimed inaccuracies in the book (19 of them relating to Lowell or Milken activities).
 

 With regard to the paragraph at issue, Armstrong wrote: "The affidavit referred to in this paragraph was completely truthful and was signed and sworn to by Cogut, not angrily rejected.” Armstrong further explained that Cogut’s retainer letter disclosed the conflict of interest, and he clarified that Cogut had consulted both with the attorney referred by Armstrong and with separate counsel. Armstrong suggested that, because the book had already been printed, the publisher
 
 *379
 
 include an errata sheet. The book was released without changes and without an errata sheet.
 

 Armstrong now charges that the quoted paragraph is materially false and defamatory in that it depicts him as "attempting unsuccessfully to procure the perjured oath of his client, Craig M. Cogut, by preparing for Cogut’s signature a false affidavit exonerating another client, Lowell Milken, which affidavit Cogut 'angrily refused to sign’ because 'the facts weren’t true.’ ” Plaintiff asserts that these statements were published with gross irresponsibility or actual malice and demands $10,000,000 in compensatory damages and $25,000,000 in punitive damages.
 

 Prior to answering, defendants moved to dismiss the complaint arguing that all facts contained in the paragraph were true or substantially true, that the plaintiff could not sustain a cause of action based upon false implications, and that defendants were protected by the defenses of "opinion” and the "single instance” rule. The trial court denied defendants’ motion, concluding that the cited passage was susceptible of a defamatory meaning and that the statements at issue were not protected by either of the claimed defenses. The Appellate Division affirmed, as do we.
 
 [5]
 

 We begin our analysis by underscoring the procedural posture of this case. All that is before us is plaintiffs verified amended complaint and defendants’ motion to dismiss on the law. We recognize that summary judgment has particular value, where appropriate, in libel cases, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms
 
 (see, e.g., Immuno AG. v Moor-Jankowski,
 
 77 NY2d 235, 256;
 
 Karaduman v Newsday, Inc.,
 
 51 NY2d 531, 543). But we recognize as well a plaintiff’s right to seek redress, and not have the courthouse doors closed at the very inception of an action, where the pleading meets a minimal standard necessary to resist dismissal of a complaint. Whether plaintiff meets this threshold standard is the focal issue on this appeal.
 

 
 *380
 
 Where a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation
 
 (Weiner v Doubleday & Co.,
 
 74 NY2d 586, 592). In making this determination, the court must give the disputed language a fair reading in the context of the publication as a whole
 
 (James v Gannett Co.,
 
 40 NY2d 415, 419-420).
 

 Armstrong claims that the paragraph in issue falls into the category of literally false and defamatory statements. By contrast, defendants insist that the verified amended complaint — which incorporates the substantial additional information contained in the 10 appended exhibits — itself establishes that the paragraph is at least substantially true, which is all the law requires. It is, for example, unquestionably true from the face of the pleading, defendants point out, that Armstrong had a possible conflict of interest when, as Lowell Milken’s attorney, he undertook representation of Cogut; that he prepared an affidavit for client Cogut that was intended to exculpate Lowell Milken; and that after reading the affidavit Cogut indeed retained his own counsel.
 

 At least one significant statement, however, does not at this juncture fit defendants’ characterization. Plaintiff insists that he never prepared a false affidavit for Cogut’s signature and that the sentence, "Cogut read [the affidavit] over and had only one problem: the facts weren’t true,” is false. Armstrong specifically pleaded in the verified amended complaint that the final affidavit that Cogut signed "set forth the same essential facts in exoneration of Lowell Milken as were set forth in every prior draft affidavit that had been presented to Cogut by Armstrong for Cogut’s comments and revisions.” Viewing the statements at issue most favorably to plaintiff, as we must on a dismissal motion, we conclude that this sentence, in the context in which it appears, is susceptible of a defamatory meaning: that Armstrong deliberately presented a false affidavit for one client (Cogut) to sign in order to exculpate another client (Lowell), resulting in Cogut’s angry discharge of Armstrong and the retention of new counsel. Thus, the complaint must go forward.
 

 While this in one sense determines the question before us, it leaves open a major point of contention: whether plaintiff’s claim is one of "defamation by implication” and if so, what standard should apply on a motion to dismiss such a cause of action.
 

 "Defamation by implication” is premised not on direct
 
 *381
 
 statements but on false suggestions, impressions and implications arising from otherwise truthful statements.
 
 Memphis Publ. Co. v Nichols
 
 (569 SW2d 412, 420 [Tenn]) is illustrative. There, the court found an article implicitly defamatory where it truthfully reported that a woman, upon finding her husband at plaintiffs home, shot the plaintiff, but the article neglected to state that at the time they all were at a social gathering with several other people, including plaintiffs husband.
 

 The concern that substantially truthful speech be adequately protected has led courts to embrace different standards for measuring the sufficiency of claims of defamation by implication
 
 (see, e.g., Strada v Connecticut Newspapers,
 
 193 Conn 313, 477 A2d 1005 [defamatory implication must arise from a material omission];
 
 Chapin v Knight-Ridder, Inc.,
 
 993 F2d 1087, 1092 [implication must be a reasonable one, and author must intend to convey it];
 
 see also, Kortz v Midwest Communications,
 
 20 Media L Rep 1890 [Minn] [rejecting theory of libel by implication as contrary to free speech values]). Defendants and
 
 amici
 
 urge us to adopt, as this State’s standard, that the defamatory implication must be clear and inescapable which, they say, would result in dismissal of the present action.
 

 The difficulty with defendants’ argument is that this is not, as they argue, a case of "a modern Rosetta stone” where the passage in issue must be "stretched and extrapolated” by subjective interpretations in order to find any possible falsity. Rather, this is, as plaintiff insists, a case of allegedly false statements of verifiable fact, with inferences flowing from those facts, and he bears the burden of proving the alleged falsity as well as the other elements of his claim. Those standards are well established in our law
 
 (see, Gross v New York Times Co.,
 
 82 NY2d 146, 156). The choice of an appropriate test for claims of defamation by implication must therefore await another day. The same is true as to defendants’ contention that
 
 November v Time, Inc.
 
 (13 NY2d 175, 179)— relied on by the Appellate Division — is today an incorrect standard for claims of defamation by implication.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, etc.
 

 [1]
 

 . The complaint annexes and incorporates the following exhibits: an excerpt from both the hardback and the paperback editions of "Den of Thieves” containing the paragraph at issue; affidavit of Craig M. Cogut, dated September 28, 1988; Cogut’s September 29, 1988 cover letter to Armstrong transmitting his affidavit; Armstrong’s submission to the U.S. Attorney dated October 18, 1988; Armstrong’s letter to Simon & Schuster dated September 13, 1991, regarding alleged inaccuracies; a letter from Mark C. Morril (Simon & Schuster senior vice-president and general counsel) to Armstrong dated September 17, 1991; Armstrong’s letter to Morril, dated September 18,1991; Armstrong’s cover letter to Morril, dated September 27, 1991, appending a list of 21 claimed inaccurate passages in the book; Morril’s letter to Armstrong, dated October 8, 1991, requesting support for the claimed inaccuracies.
 

 [2]
 

 . The signed, but not the original, affidavit is appended as an exhibit to the amended verified complaint.
 

 [3]
 

 . The bracketed material did not appear in the hardcover edition of the book, but did appear in the later paperback version.
 

 [4]
 

 . Cary Maultasch was a trader and Jim Dahl was a salesman with Drexel Burnham Lambert.
 

 [5]
 

 . We agree with the trial court and the Appellate Division that neither the "single instance” rule nor "opinion” protection is determinative here. The "single instance” rule applies where a publication charges a professional person with a single error in judgment, which the law presumes not to injure reputation (Smolla, Defamation § 4.06 [3] [1991]). Plaintiff’s claim that he stands accused of suborning perjury and other unethical conduct transcends this narrow doctrine. Similarly, it is clear that the complaint is based not on "opinion” but on alleged factual misstatements and the inferences arising from them.