Duane Reade, Inc. v Clark (2004 NY Slip Op 50174(U))

[*1]

 Duane Reade, Inc. v Clark

2004 NY Slip Op 50174(U)

Decided on March 31, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 31, 2004

Supreme Court, New York County
 DUANE READE, INC., Plaintiff,
against
PATRICK CLARK and THE WAVE PUBLISHING CO., Defendants.
Index No. 107438/03

Sari Gabay Rafiy, Proskauer Rose LLP, 1585 Broadway, New York, NY 10036, 212 969 3000
Defendant Patrick Clark Counsel
Cameron Stracher, Levine Sullivan Koch & Schulz, LLP, 230 Park Avenue, Suite 1160, New York, NY 10169 212 850 6100
Defendant Wave Publishing Co. Counsel
Kenneth Dramer, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022-6069
Plaintiff's Counsel

DEBRA A. JAMES, J.
Plaintiff Duane Reade, Inc. ("Duane Reade"), a New York City drug store chain, brings this action claiming defamation and tortious interference with ongoing and prospective business relations against defendants Patrick Clark, an artist who resides in Rockaway Beach ("Clark"), and the Wave Publishing Co., the publisher of The Wave of Long Island ("the Wave"), a local Rockaway Beach newspaper. In its complaint, Duane Reade claims that defendant Clark damaged the store's most valuable asset, that is "its reputation as a good neighbor to the communities it serves". According to Duane Reade, the damage took place when Clark purchased a full-page advertisement in the Wave that contained purposefully or recklessly untrue assertions, to wit, that in constructing a sign on the top of its new store, Duane Reade was exploiting an adjoining memorial park being built as a tribute to Rockaway Beach residents who died in the September 11 terrorist attacks and abusing the memories of those who perished in such attack. Duane Reade alleges that the Wave breached its own policy to refuse inappropriate advertisements when it published the advertisement with either knowledge that its statements were false or with a reckless disregard of whether or not its assertions were true. Duane Reade seeks compensatory as well as punitive damages based on "defendants' willful and malicious conduct."
Procedural Posture of the Lawsuit
Neither defendant has served an answer to the Complaint. Instead, defendants Clark (Motion Sequence No. 1) and the Wave (Motions Sequence No. 2) each move to dismiss plaintiff Duane Reade Inc.'s defamation complaint against them pursuant to CPLR 3211 (g). They argue that Duane Reade Inc.'s complaint should be summarily dismissed as it constitutes a "Strategic Lawsuit Against Public Participation", otherwise known as a "SLAPP" suit. According to [*2]defendants, the advertisement constitutes non-actionable opinion and is in any event incapable of conveying defamatory meaning. They assert that Duane Reade's tortious interference claim fails, as a matter of law, under both the First Amendment of the United States Constitution and common law. Each seeks to recover compensatory and punitive damages, as well as attorneys fees and costs from Duane Reade. Defendants' individual motions are considered together herein.
The Complaint
For the past two years, plaintiff Duane Reade has been developing a new store in Rockaway Beach, in the area of Beach 116th Street. It is within walking distance of the company's existing store in Rockaway Beach. The site of the new store had been a vacant commercial lot for many years.
Beach 116th Street is also the site of a local park being developed as a memorial to the Rockaway residents who perished in the September 11 terrorist attacks, as well as the Rockaway residents who died on November 12, 2001, when American Airlines Flight 587 crashed in Rockaway. The Chamber of Commerce of the Rockaways, Inc., formed the Rockaway Partnership, Inc., an I.R.C. 501 (c) (3) corporation, to construct the park, a waterfront recreation area abutting Jamaica Bay, which will house the Rockaway Beach community's tribute. The memorial, which is known as Tribute Park, is being built adjacent to where the new Duane Reade store is being built. Defendant Clark, an artist and Rockaway Beach resident, was chosen to design the memorial to the dead to be built as the tribute in the park.
Duane Reade states that its management, including the company's Chief Executive Officer Anthony J. Cuti, has had extensive discussions with Rockaway community leaders concerning the development of the new Duane Reade store and Tribute Park. Duane Reade further says that it has made substantial in-kind contributions worth tens of thousands of dollars to Tribute Park including: electrical service for the park with a main feeder located on the park's property, a water line to Tribute Park, a catch basin/seepage pit on the park's property so that its drainage requirements for development could be met, and separate electric circuits for the store's exterior lights so that the lights may be controlled separately and dimmed or turned off during special events at Tribute Park.
A news article entitled "Controversy Grows Over Pharmacy Sign" appeared in the Wave on March 22, 2003 and reported that "the size and design of the sign on the new Duane Reade pharmacy building under construction has caused some anger in the community because it will overshadow the new Tribute Park." It described the architectural drawings as showing a 400 square-foot, lighted billboard on the store's roof. According to the article, the New York City Department of Buildings ("DOB") had earlier in the month disapproved plans for the roof top sign and was reviewing them to determine if the sign was part of the "overall building structure" and thus covered by the property's building permit. The Wave article reported that the building code required a permit for any sign that would be in view of a public park.
The following week, Mr. Clark purchased an advertisement entitled "Take Down the Sign!!! Boycott Duane Reade", which appeared in the March 29, 2003 edition of the Wave. It was identified to readers as a "Paid Advertisement" and "a personal opinion by Patrick Clark, upset Tribute Park Artist." The bottom of the page on which the Advertisement appeared stated: "This page was written and paid for solely by Patrick Clark, artist, and reflects only his own personal opinion."
[*3]
The text of the article, in pertinent part, reads:

The Rockaway Partnership, the Chamber of Commerce and Community Board 13 have implored Duane Reade to remove the huge, monumental, drive-in sign they've erected on top of their already overbearing super-store. Duane Reade's CEO, Mr. Anthony Cuti seems to have simply laughed in our faces and the face of the whole Rockaway community...and point blank refused. Why? Most likely because he thinks the sign means big, big bucks for his greedy company. He probably thinks the Rockaway residents are moron drones who will be attracted to spend money at the store like flies drawn to dog droppings by the huge bright, spot light lit sing that will shine like Times Square from here to Marine Park. The sign is an aesthetic nightmare on an already horrendous building that does not belong at this location.
Does the Duane Reade Board of Directors think the sign will attract JFK air travelers to New York to rush from JFK in cabs looking for Q-tips and personal hygiene products in Rockaway???
***

What good is a sign designed to shine right down into Tribute Park and on to our 9/11 Memorial? Does Mr. Cuti arrogantly believe if he forces every park visitor and every 9/11 family who comes to the Park in sorrow, seeking serenity and comfort to see his advertising reflect off the glass dome and off every inch of the Park, they'll rush right over and spend money in his store? If so, I believe he's badly mistaken. The sign just adds insult to injury. It would be so easy for them to be good neighbors, to be worthwhile members of this community...but they just can't do it. They are cotton ball mercenaries without a soul, hunting for prey.
On September 11, 2001, Duane Reade lost a store in the WTC disaster. You would think that the terrible loss of their own company would impact them, but it hasn't, not one bit. Mr. Cuti and his Board of Directors have forgotten. But Rockaway has NOT forgotten. WE will never forget.
Finally, a Wave article of May 23, 2003, stated that Duane Reade had obtained the proper permit for the billboard atop the new Duane Reade store, with a modification that the sign be "moved back and ...angled in the other direction."[FN1]
[*4]Standards for motion to dismiss under the SLAPP statute
Almost a dozen years ago, the Legislature adopted chapter 767 of the Laws of 1992, with the intent of deterring a "type of retaliatory litigation, ... referred to as a 'SLAPP Suit' or Strategic Lawsuit Against Public Participation". 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 3211.51. This nomenclature describes "a tactic employed by business and developers who find it an effective means of silencing public opposition to controversial projects." Id.
In enacting this statute, the Legislature stated in its findings and purposes that

The legislature hereby declares it to be the policy of the state that the rights of citizens to participate freely in the public process must be safeguarded with great diligence. The laws of the state must provide the utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.
Laws of 1992 (ch 767, § 1); see also Street Beat Sportswear, Inc. v National Mobilization Against Sweatshops, 182 Misc2d 447, 451 (Sup Ct, NY County 1999) quoting Allan & Allan Arts v Rosenblum, 201 AD2d 136, 143-144 lv denied 85 NY2d 921, cert denied 516 US 914.
"The SLAPP Statute is intended to prevent well-heeled public permit holders from using 'the threat of personal damages and litigation costs...as a means of harassing, intimidating or...punishing individuals, unincorporated associations...and others who have involved themselves in public affairs' by opposing them." Adelphi Univ. v Committee to Save Adelphi, NYLJ, Feb. 6, 1997, at 33, col 2. (Sup Ct, Nassau County, 1997 [citation omitted]). During the Senate debates, the bill's supporters cited a history of abuses among some developers or other businesses, who sought to silence opponents of projects or proposals through lawsuits for defamation. See Senate Debate Transcripts, L 1992, ch. 767, New York Legis. Serv. Opponents would incur substantial costs, not covered by insurance, in defending lawsuits that were ultimately dismissed.
The law "focuses on retaliatory litigation commenced or maintained for the purpose of intimidating persons who have voiced opinions in public meetings or discussions inimical to those of the person controlling the litigation" and is designed to deter such abuses. 8 Weinstein-Korn-Miller, NY Civ Prac 3211.51, supra. It facilitates the early dismissal of the "SLAPP" suit, by tightening the legal substantive requirements imposed upon plaintiffs in order to prevail in such a suit and by lowering the procedural hurdles that the defendant in such a suit must clear in order to obtain dismissal of the suit.
As for the former, under Civil Rights Law § 76-a, "a retaliating plaintiff in a SLAPP suit who alleges defamation is to be considered a public figure and as such, under established [*5]substantive law governing recovery of damages for libel and slander, is not entitled to recover unless there is clear and convincing evidence that the defendant knowingly defamed the plaintiff or acted with reckless disregard for the truth or falsity of the statements" 8 Weinstein-Korn-Miller, NY Civ Prac 3211.51, supra. Thus, under the anti-SLAPP statute's substantive provisions, the opponents of permit holders or applicants enjoy the same "safeguards for freedom of speech and the press that are required by the First and Fourteenth Amendments [of the United States Constitution] in a libel action brought by a public official against critics of his official conduct" New York Times Co. v Sullivan, 376 US 254, 285-286 (1964). 
A determination whether the anti-SLAPP statute pertains to a particular action requires a twofold inquiry. First, under Civil Rights Law § 76-a (1) (b), the court must determine whether the plaintiff is "a public applicant or permittee," who is defined as any person who has applied to obtain a permit, zoning change, lease, license, or other permission from any government body." Next, under Civil Rights Law § 76-a (1) (a), the court must decide whether the lawsuit is an "action involving public petition and participation," which is "an action, claim, cross-claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission."
In terms of procedure, CPLR 3211 (g) of the anti-SLAPP law governs motions to dismiss. It incorporates CPLR 3211 (a) (7) by reference, under which "[a] party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . the pleading fails to state a cause of action." Under that subdivision, the court in determining such a motion must presume the facts pleaded to be true and accord such pleading every favorable inference. See Commodari v Long Island University, 295 AD2d 302, 303 (2d Dept 2002) (affirming dismissal under CPLR 3211 (a) (7) of claims for defamation and tortious interference). However, CPLR 3211 (g) amends prior law so that on a motion to dismiss a "SLAPP" action, the burden is upon the plaintiff to establish that its claim has the requisite "substantial basis." In order to avoid dismissal of its SLAPP suit complaint, plaintiff must establish by clear and convincing evidence a "substantial basis" in fact and law for its claim. The Legislature viewed "substantial" as a more stringent standard than the "reasonable" standard that would otherwise apply. See Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:73. 
 The supporting papers of defendants' pre-joinder motions to dismiss and plaintiff's opposition each include exhibits appended to affidavits that are not part of the Complaint. Normally, the court may not weigh such material except on a motion for summary judgment. Indeed, this court agrees that the Court of Appeals pronouncements in Silsdorf v Levine (59 NY2d 8 [1983]) and Armstrong v Simon & Schuster (85 NY2d 373 [1995]) set forth the applicable principle of law. As the Court of Appeals stated in Silsdorf,

The issues raised on this appeal come before the court in the procedural posture of a motion to dismiss the complaint for failure to state a cause of action. Thus, we accept as true each and every allegation made by plaintiff and limit our inquiry to the legal sufficiency of plaintiff's claim. If, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action.
Silsdorf v Levine, 59 NY2d 8, 12 (1983) (citation omitted).
[*6]
Likewise on a motion to dismiss before the interposition of an answer the Court recognized "a plaintiff's right to seek redress, and not have the courthouse doors closed . . . where the pleading meets a minimal standard necessary to resist dismissal of the complaint." Armstrong v Simon & Schuster, 85 NY2d 373 379 (1995). However, CPLR 3211 (g) of the anti-SLAPP statute grants defendants a preference on the calendar for an evidentiary hearing on a motion to dismiss, where there are disputed facts. Thus, it is apparent that the Legislature intended that the court look beyond the Complaint on such a motion. Even putting aside the Legislature's apparent intent, this court finds that it may consider evidence extraneous to the Complaint without contravening CPLR 3211 (a) (7) strictures based upon recognized exceptions carved out thereunder. As stated by the Court of Appeals in Guggenheimer v Ginzberg (43 NY2d 268, 275 [1997] [citations omitted]):

Initially, the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail. When evidentiary material is considered, the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one, and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissal should not eventuate.None of the parties here dispute that the March 22, 2003, and May 23, 2003, articles pertaining to the plaintiff and its new store were published in the Wave so the court considers them in reaching its decision, notwithstanding that neither was part of the Complaint.
Opinion of the Court
Plaintiff does not dispute that it is a "public permittee", as defined under Civil Rights Law § 76-a (1) (b), since it sought permission to develop its store and erect the sign from a government body, the DOB. As a public figure, Duane Reade may not maintain a "SLAPP" action unless it is able to demonstrate by clear and convincing evidence that defendants acted with actual malice that is, with knowledge that the allegedly defamatory statement was false or with reckless disregard for the truth or falsity of the statement. 
Duane Reade's position is that it may not be held to such a standard because its action is not a "SLAPP" action. It argues that its defamation action does not fit the definition of an "action involving public petition and participation" under the act since its lawsuit is not materially related to any effort by Clark to report on, comment on or oppose Duane Reade's application. Duane Reade argues that there is no material relationship because defendant Clark has not taken any steps to challenge the company's existing permit and because Clark's communication was not directed to Duane Reade, as permit applicant.
This court disagrees and finds it beyond peradventure that Duane Reade's lawsuit is one materially related to efforts by Clark to oppose Duane Reade's application for a permit. Duane Reade's position that Clark made no effort to challenge the permit is contrary to the facts in that Clark's protest occurred on the heels of the Wave's report of DOB's interim issuance of a disapproval and reconsideration of plans for the rooftop sign. No reasonable interpretation of the facts supports the conclusion that Clark's advertisement did not constitute his effort to "report on, comment on, . . . challenge or oppose" DOB's issuance of a permit or Duane Reade's application for permission to erect a sign.
[*7]
The court's decision in Harfenes v Sea Gate Association, Inc., 167 Misc 2d 647 (Sup Ct, NY County 1995) supports this finding. It is true that under McKinney's Consolidated Laws of NY, Book 1, Statutes § 311, a statute that infringes upon a common law right is strictly construed. However, this court does not read the anti-SLAPP statute so narrowly as to exclude from its protection the use of the press to petition and participate in a public proceeding. Defendant The Wave astutely points to the language in Harfenes, which states that the statute was "designed to protect those citizens who, usually before a government agency, publicly challenge" permits or approvals. Harfenes, 167 Misc 2d at 650 (emphasis added). The word "usually" counters plaintiff's argument that Harfenes holds that the legislation somehow excludes all communication except that which occurs before a government agency. An interpretation that a critics statements are unprivileged because they appeared in the newspaper and were not spoken directly to the public agency would be completely antithetical to the fundamental free speech rights protected under the anti-SLAPP statute. As observed by the court in Adelphi Univ, supra;

To limit the [s]tatute to [statements made directly to a government agency in opposing a formal permit application] would render it virtually useless since almost every hotly contested public debate receives press coverage, and the ability to participate in the debate to influence that coverage often determines the outcome."
Adelphi Univ. v Committee to Save Adelphi, NYLJ, Feb. 6, 1997, at 33, col 2. supra;
This Department's only appellate decision on SLAPP suits, Bell v Little (250 AD2d 485 [1st Dept 1998]), also supports the application of the anti-SLAPP statute to the case at bar. There, the court found that Little's alleged inscription of false and malicious statements on building exteriors and sidewalks did not implicate his rights of public petition and participation. Graffiti on building exteriors and sidewalks would only gratuitously put such commentary before a public agency, which distinguishes such scrawling from Clark's use of the press to challenge an agency permit. Here, Clark's newspaper publicity campaign, though calling for an economic boycott, was unequivocally his "effort to report on, comment on,...challenge or oppose" Duane Reade's sign permit. In fact, DOB's permit for the installation of the sign was not issued until a month after Clark's advertisement appeared at which time DOB required Duane Reade to slightly reposition the sign. At a minimum, Clark's advertisement was reasonably targeted to make DOB aware of his concerns during the time it was reviewing permission for the sign. With respect to DOB's permit for installation, it should be noted that the additional requirement that the sign be repositioned occurred just two months after Clark's advertisement appeared in the Wave. Though there is no evidence linking DOB's additional repositioning requirement to Clark's advertisement, that it was published prior to DOB's action distinguishes it from the statements in Bell where the court found no evidence that the sidewalk graffiti implicated any rights of public petition before any public agency.
The court agrees with defendant the Wave's analysis of Street Beat Sportswear, Inc. v National Mobilization Against Sweatshops (182 Misc 2d 447, 453 [Sup Ct, NY County 1999]) where the court, in dicta, found that by themselves the rallies and press conferences conducted by union workers inside retail stores urging customers not to purchase plaintiff's clothing products would not be materially related to any state and federal proceedings but that in the context of the [*8]workers' ongoing federal lawsuit such activities were, in fact, in furtherance of the workers' goals of obtaining a lawful wage. Similarly in this case, despite the close ties between freedom of the press and the free speech guarantee that the anti-SLAPP statute seeks to safeguard, Clark's advertisement, which admittedly made no reference to any governmental process, would not, occurring in a vacuum, relate materially to any governmental process. However, like the federal labor law claims in Street Beat, the DOB's permit process was a prerequisite to the activity carried out by the plaintiff to which the defendant Clark was opposed. See also Adelphi Univ. v Committee to Save Adelphi, NYLJ, Feb. 6, 1997, at 33, col 2. supra; T.S. Haulers, Inc. v Kaplan, 295 AD2d 595 (2d Dept 2002).
In the same vein, in Harfenes v Sea Gate Association, Inc., 167 Misc 2d 647 (Sup Ct, NY County 1995), the court grounded its dismissal of plaintiff homeowners' SLAPP action upon their admission that they were unaware of the homeowner association board's attempt to obtain a permit to place material along the community's shoreline at the time it was made. There is no such admission here and in fact, plaintiff Duane Reade's permit and the role of the DOB was the front page story that appeared one week before Clark's advertisement published by the very same newspaper that is Clark's co-defendant in the instant lawsuit.
The final inquiry is whether the allegations of Duane Reade's complaint, deemed as true for purposes of this motion, demonstrate with convincing clarity that defendants acted with actual malice that is, with knowledge that the allegedly defamatory statements were false or with reckless disregard for the truth or falsity of the statement. The court must assess whether the statements constituted facts in the first place and if so, whether such factual statements are "reasonably susceptible of defamatory connotation" or meaning.
It is "beyond dispute that expressions of opinion are cloaked with the absolute privilege of speech protected by the First Amendment," and "are constitutionally protected and may not be the subject of private damage actions." Jaszai v Christie's, 279 AD2d 186, 188 (1st Dept 2001). Expressions of opinion cannot form the basis of a cause of action in defamation. In determining whether a publication is an actionable statement of opinion or constitutionally protected opinion, in New York State, the court must examine "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to 'signal . . . readers and listeners that what is being read or heard is likely to be opinion, not fact'." Gross v New York Times Co, 82 NY2d 146, 153 (1993) (citations omitted).
Under each of these indices, the content of Clark's advertisment constitutes pure opinion and is not actionable. Where, as here, the Rockaway citizenry, as revealed in its local paper, was engaged in heated debate over a public matter, a reasonable audience would understand in that context that the speaker, here defendant Clark, did not mean the words as conveying actual facts. See 600 West 115th Street Corp. v Von Gutfeld, 80 NY2d 130, 142, 143 (1992). In addition, Clark's self-characterization as an "upset Tribute Park artist" explicitly revealed his inherent bias. Given this moniker, readers of the Wave were likely to understand his advertisement as an expression of opinion. See Brian v Richardson, 87 NY2d 46, 53 (1995). Moreover, Clark's advertisement was replete with hyperbole and rhetoric (for example, "Mr. Anthony Cuti seems to have simply laughed in our faces and the face of the whole Rockaway community"; "thinks Rockaway residents are moron drones who will be attracted to spend money at the store like flies [*9]drawn to dog droppings"; "Duane Reade's board of directors are 'cotton ball mercenaries without a soul, hunting for prey'"; "Duane Reade's Board of Directors think the sign . . .will attract air travelers from JFK"). Such statements, which are not literal, are beyond what any reasonable person would regard as fact. See also Hobbs v Imus, 266 AD2d 36, 37 (1st Dept 1999). In addition, Clark's melodramatic call for a boycott of Duane Reade uses terms, such as "monumental," "superstore" or "aesthetic nightmare", which are not capable of precise definition and therefore constitute protected opinion.[FN2] Finally, Duane Reade has not alleged that defendant Clark or the Wave had access to any undisclosed facts on the subject. The controversy was covered in the Wave in several articles that appeared before the advertisement in question and those articles recited the facts upon which readers might evaluate the opinions contained in Clark's advertisement and reach their own conclusions. See Silsdorf v Levine, 59 NY2d 8, 12-13, supra; Rinaldi v Holt, Rinehart & Winston, Inc., 42 NY2d 369, 381 (1977).
Even taking the content of Clark's advertisement as fact, the statements that Duane Reade challenges are not, as a matter of law, "reasonably susceptible of a defamatory connotation" unlike the perjury accusation against attorney Armstrong and official corruption charge against Ocean Village's former mayor Silsdorf in Armstrong v Simon & Schuster, 85 NY2d 373, supra, and Silsdorf v Levine, 59 NY2d 8, supra, respectively, where the Court of Appeals upheld denials of defendants motions to dismiss in those cases.
A publication is defamatory if it would "expose plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of [it] in the minds of right-thinking persons, and . . . deprive [it] of their friendly intercourse in society." Dillon v City of New York, 261 AD2d 34, 37-38 (1st Dept 1999). The principle is well established that it is for the court to make the threshold determination of whether the challenged publication is capable of conveying a defamatory meaning. Silsdorf v Levine, 59 NY2d 8, supra.
The court accepts as true, for purposes of this motion, Duane Reade's allegation that it has been a good, moreover, an excellent neighbor and listened to the community in developing its new Rockaway store. Far from being indifferent to the Rockaway community's grief over the tragic events of September 11, 2001, Duane Reade was, in fact, instrumental in the development of the Tribute Park. Nonetheless, under the tests enunciated by the courts, the content of Clark's advertisement, even if presumed false, does not constitute defamation.
Defendant the Wave is correct that the alleged implications of Clark's advertisement are simply not defamatory under Hall v Binghamton Press Co. (263 AD 403, 413-414 [3rd Dept 1942], aff'd 296 NY 714 [1946]). Hall stands for the proposition, which has never been disturbed, that accusations of greed, selfishness or callousness, even if deemed to be false statements of fact, are not actionable. A depiction of plaintiff as "one who has placed greed [*10]above public welfare does not accuse him of personal corruption or dishonesty. Greediness does not imply dishonesty" Hall v Binghamton Press Co., 263 AD 403, supra [Bliss, J., concurring].) 600 West 115th Street Corp. v Von Gutfeld, 80 NY2d 130, supra, where the Court of Appeals held a statement that plaintiff's restaurant "denigrated" the neighborhood was not defamatory as a matter of law, is also instructive. In fact, though Duane Reade is correct that the Von Gutfeld decision did not address the viability of a defamation claim based upon a false accusation that the landowner was a bad neighbor, it did hold that viewed in the context of a public hearing, no reasonable person would conclude that Von Gutfeld's references to bribery and corruption, of an illegal lease and fraudulent permit were presentations of fact, accusations that were much more extreme than the advertisement of which Duane Reade complains here.
So too, plaintiff's claim of tortious interference with ongoing and prospective contractual business relations fails. This court concurs with defendants that the same First Amendment requirements that govern actions for defamation apply to a tortious interference cause of action arising from remarks concerning plaintiff's product. Unelko Corp. v Rooney, 912 F2d 1049, 1057-58 (9th Cir 1990), cert denied, 499 US 961 (1991). Defendants are likewise correct that an essential element of a tortious interference cause of action is absent from plaintiff's allegations, to wit, Duane Reade does not allege the particular contract that was breached, or the particular relationship interrupted with which defendants are alleged to have interfered. Bus. Networks of N.Y., Inc. v Complete Network Solutions, Inc., 265 AD2d 194 (1st Dept 1998). Duane Reade has not pled that the advertisement interfered with any particular relationship or contract or any potential relationship or contract with any third party, or that any contract whatsoever was breached.
Therefore, the court holds that as a matter of law, Duane Reade has failed to prove by clear and convincing evidence that Clark's advertisement was defamatory or tortiously interfered with any of its business relationships.
Civil Rights Law § 70-a (1) (a) provides for costs and attorneys fees where it is demonstrated that an action involving public petition and participation was commenced and continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law. Civil Rights Law § 70-a (1) (b) provides for compensatory damages if the defendant demonstrates that such action was commenced or continued for the purpose of harassment, intimidation, punishment or malicious inhibition of free speech, petition or association rights. Under Civil Rights Law § 70-a (1) (c), punitive damages are assessed should defendant prove that the sole purpose of the lawsuit was to harass, intimidate or punish defendants
This court finds that Duane Reade brought this lawsuit, which is "materially related" to Clark's efforts to comment on Duane Reade's permit, without any substantial basis in fact or law. Accordingly, defendants are entitled to recover costs and attorney's fees.
Duane Reade obtained its permit and its right to place its sign on the store rooftop and has not even alleged that Clark's boycott call has had any impact on its sales. Plaintiff has not shown any substantial basis for the lawsuit and its Complaint establishes no purpose other than intimidation, harassment and punishment for its initiation. Therefore, the court holds that defendants are entitled to both compensatory and punitive damages from Duane Reade.
Before bringing this motion, counsel for the Wave wrote Duane Reade's counsel detailing the factual and legal reasons that its Complaint lacked any proper basis and invited Duane Reade [*11]to discontinue its action and publish a rebuttal of Clark's advertisement in the Wave. Duane Reade chose, nonetheless, to press its claims. This court wholeheartedly embraces the observation of the United States Supreme Court in Gertz v Robert Welch, Inc. (418 US 323, 344 [1974]) that "[t]he first remedy of any victim of defamation is self-help using available opportunities to contradict the lie or correct and thereby minimize the adverse impact on reputation." This court is mystified as to plaintiff Duane Reade's rejection of the invitation to do just that.
Based upon the foregoing, it is
ORDERED and ADJUDGED that the defendant Clark's motion (Motion Sequence No. 1) and defendant The Wave's motion (Motion Sequence No. 2) to dismiss are GRANTED and the Complaint is DISMISSED in its entirety and the Clerk is directed to enter judgment accordingly; and it is further,
ORDERED and ADJUDGED that defendants' counterclaims for attorney's fees, costs, compensatory and punitive damages are severed and an assessment thereof is directed in accordance with this decision; and it is further
ORDERED that a copy of this order with notice of entry be served upon the Clerk of the Trial Support Office (60 Centre Street, Room 158), who is directed, upon the filing of a note of issue and a statement of readiness and the payment of proper fees, if any, to place this action on the appropriate trial calendar for the assessment herein above directed.
This is the decision and order of the court.
Dated: April 1, 2004 ENTER:
 
 J.S.C.
Decision Date: March 31, 2004
Footnotes

Footnote 1: The Complaint also alleges that on April 16, 2003, the "Front Page" of the Wave's website displayed a news article stating that the New York State Department of Environmental Conservation ("DEC") "has forced Duane Reade, a company that is building a new store nearby the park, to remove the construction debris they dumped on the site while completing their parking lot." Duane Reade makes no argument with respect to this statement on this motion and therefore the court considers any challenge to that statement as abandoned. In any event, the main thrust of the article was DEC's decision to "pull" the permit for construction of Tribute Park, in order to impose a modification upon the developers as to the amount of bayfront required to be left on the north end of the site, a statement unrelated to any order that Duane Reade remove debris. The Chamber's Executive Director opined in the article that DEC's decision to pull the permit might delay by a couple of weeks the completion of the sculpture, beyond the planned September 11 dedication, which had nothing to do with any debris Duane Reade needed to remove from the site. 

Footnote 2: The court disagrees with Duane Reade that Wellington Funding & Business Consultants, Inc. v Continental Grain Co. (259 AD2d 323, 324 [1st Dept 1999]), supports its position. There, the court found that "The letter upon which plaintiff predicates its claim for defamation contained false statements, inasmuch as it inaccurately conveyed the impression that the defendant subsidiaries had not authorized plaintiff to represent that they were interested in its loan financing program." Involving a factual statement that impugned the business's integrity and competence, Wellington is inapposite.