*McGillvary v. Rolling Stone, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of April, two thousand twenty-six.

PRESENT:
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> *Circuit Judges.*

———————————————————————

CALEB L. MCGILLVARY,

> *Plaintiff-Appellant,*

> v.                                                          25-1599

ROLLING STONE, LLC, MARLOW STERN, WENNER MEDIA, LLC,

> *Defendants-Appellees.*

———————————————————————

For Plaintiff-Appellant:     Caleb L. McGillvary, *pro se*, Trenton, NJ.

For Defendants-Appellees:     Lynn B. Oberlander (Sasha Dudding, *on the brief*), Ballard Spahr LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Ho, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the May 21, 2025 judgment of the district court is **AFFIRMED**.

Caleb McGillvary, proceeding *pro se*, appeals from the district court's judgment dismissing his defamation action against Rolling Stone, LLC, Marlow Stern, and Wenner Media, LLC (collectively, "Rolling Stone"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to resolve this appeal.

"We review *de novo* a district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiffs." *Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012). "In considering a motion to dismiss for failure to state a claim pursuant to

2

Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," as well as documents "integral to the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted). "[W]e liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted).[1]

McGillvary alleges that Rolling Stone defamed him in a 2023 article, "DARK TALE: A Hatchet Wielding Hitchhiker Went Viral. Then He Killed Someone," that, by way of reviewing a forthcoming television documentary, described his involvement in thwarting a high-profile attack in 2013 (for which he was cleared of any wrongdoing) and in committing a later unrelated murder for which he was convicted and is now serving a fifty-seven-year sentence.[2] As the district court explained,

---

[1] In light of McGillvary's *pro se* status, we also grant his motion to cite "supplemental authorities" pursuant to Federal Rule of Appellate Procedure 28(j). *See* App. Doc. No. 40 (motion).

[2] In rendering our decision here, we consider the text of the article, which McGillvary's amended complaint (the operative pleading in this action) "incorporated by reference." *See DiFolco*, 622

3

> On February 1, 2013, [McGillvary] was involved in an incident that would later become the subject of a Netflix documentary titled "The Hatchet Wielding Hitchhiker". . . . In the incident, . . . [McGillvary] used a hatchet to defend a crowd of people from Jett Simmons McBride, who drove his car into the group in a racially motivated attack. The [d]ocumentary also details [McGillvary's] subsequent conviction for an unrelated murder for which [he] is currently incarcerated.

App'x at 16 (footnotes omitted). Rolling Stone's article "reviewed the [d]ocumentary and provided further reporting on these events." *Id.*

In particular, McGillvary contends that the article contained four libelous statements: (i) "[t]hose who knew [McGillvary] describe [him] as prone to fits of rage" (the "fits of rage" statement), Suppl. App'x at 30; (ii) "[McGillvary] tried to start a fire in the family home and was subsequently sent into foster care at the age of 13" (the "fire starter" statement), *id.* at 31; (iii) "[McGillvary] began bragging to Fresno locals that he'd handed [McBride] a joint laced with a number of drugs" (the "laced-joint" statement), *id.* at 29; and (iv) McGillvary told McBride "that they were both ghosts" and encouraged him to drive his truck into a crowd of people "right now" since "nobody could see us" (the "ghosts" statement), *id.* at 30. We address each statement in turn.

---

F.3d at 111.

We agree with the district court that the "fits of rage" statement was not defamatory because it was non-actionable opinion. "In New York, the courts employ a flexible approach in distinguishing actionable fact from non-actionable opinion."[3] *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000). Courts consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Id.* (alteration adopted and internal quotation marks omitted) (quoting *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993)).

Here, the context of the "fits of rage" statement made clear that it was an expression of opinion. The statement read: "Those who knew him describe . . . McGillvary[] as prone to fits of rage." Suppl. App'x at 53. The article went on to quote McGillvary's cousin, who said that he "honestly believe[s McGillvary] has mental issues." *Id.* Taken in context, the "fits of rage" statement clearly

---

[3] The district court applied New York law, which the parties agree governs McGillvary's claims here.

5

signaled to readers that it was relaying the *opinions* of those who knew McGillvary, not conveying a historical fact about McGillvary's personality or behavior. At the very least, the statement would signal that the *author* was conveying an opinion that he had formed based on statements provided by others. *See, e.g.*, *Melius v. Glacken*, 94 A.D.3d 959, 960 (2d Dep't 2012) (holding that the defendant's characterization of the plaintiff as "an 'extortionist' who was seeking 'to extort money'" was a non-actionable expression of opinion where it was based on unchallenged, disclosed facts and "'d[id] not imply the existence of undisclosed underlying facts'" (quoting *Gross*, 82 N.Y.2d at 153)); *Joseph v. Joseph*, 107 A.D.3d 441, 442 (1st Dep't 2013) (holding that statements that plaintiff was "a 'scorned' woman" who "had a 'maniacal rage,'" and "went on 'terroristic binges'" were "expressions of opinions, not fact, or they constituted hyperbole" and either way were "absolutely protected").

The "fire starter" statement was likewise not defamatory, but for a different reason. The article stated that McGillvary "tried to start a fire in the family home and was subsequently sent into foster care at the age of [thirteen]." Suppl. App'x at 53. Because McGillvary acknowledged in his amended complaint that he "attempted to commit suicide at [four] years of age[] by drinking a bottle of cough

syrup and lighting a sleeping bag on fire," *id.* at 31, the district court concluded that McGillvary had admitted to the truth of the "fire starter" statement, which is an absolute defense to defamation. *See Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2d Cir. 2015) ("It is axiomatic, of course, that truth is an absolute defense to a defamation claim.").

McGillvary counters that the "fire starter" statement arguably implied that he attempted to start a fire in the family home when he was thirteen – the same year that he was sent to foster care – an allegation that he denies. But the "fire starter" statement contains no such temporal limitation. It merely says that he "tried to start a fire in the family home and *was subsequently* sent into foster care at the age of 13." Suppl. App'x at 53 (emphasis added). When read in context, the disputed statement was not "reasonably susceptible to the defamatory meaning imputed to it" – namely, that McGillvary had attempted to start a fire in the family home when he was thirteen. *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997); *see also Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995) ("Where a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation.").

7

With respect to the "laced-joint" and "ghosts" statements, McGillvary argues they implied that (i) he bore fault for McBride's driving into a group of bystanders with his truck, and (ii) he had perjured himself during subsequent state-court proceedings in which he testified about the incident. Suppl. App'x at 30. The two statements appeared in the same section of the article:

> Then there was the matter of the incident itself. [McGillvary] began bragging to Fresno locals that he'd handed the driver, Jett McBride, a joint laced with a number of drugs but he "couldn't handle his shit." (A toxicology report only found marijuana in McBride's system.) According to Fresno cop Jeff Stricker, [McGillvary] and McBride smoked a joint in the vehicle, prompting [McGillvary] to tell McBride that "they were both ghosts," adding, "I bet we could drive through that truck right now and nobody could see us."
>
> "He's not perfectly clean in this incident," Stricker maintains.

*Id.* at 53–54.

The district court held that neither the "laced-joint" statement nor the "ghosts" statement was defamatory. The negative implications that McGillvary imputed to those statements, the court held, could "only be reached when considering these statements along with materials from outside of the *Rolling Stone* [a]rticle itself." *McGillvary*, 2025 WL 1455911, at *5. And in the absence of any showing that the article itself endorsed such negative meanings, McGillvary had failed to show that they were defamatory. *Id.*

8

On appeal, McGillvary argues that the "laced-joint" and "ghost" statements were clearly defamatory and that the district court erred in concluding otherwise. We need not reach this question, however, because McGillvary has conceded on appeal that he is a limited-purpose public figure with respect to his role in the February 1, 2013 hitchhiking incident.[4] Thus, he was required to plead that Rolling Stone's statements were made with actual malice – "that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). For the reasons explained below, he has not done so.

We have held that actual malice "must be alleged plausibly in accordance with Rule 8" of the Federal Rule of Civil Procedure and that mere conclusory statements that a defendant acted with knowledge or reckless disregard of a statement's falsity do not suffice. *See id.* at 545, 547. McGillvary's allegations fall far short of that bar.[5]

---

[4] McGillvary argues that he is not a limited-public figure with respect to statements that he allegedly made about that incident. That argument is unavailing. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 (S.D.N.Y. 2013) ("Once a plaintiff is deemed a limited purpose public figure, courts allow the heightened protections to sweep broadly, covering all statements by defendants that are not 'wholly unrelated to the controversy.'" (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980))), *aff'd*, 807 F.3d 541 (2d Cir. 2015).

[5] The district court did not reach the question of whether McGillvary had pleaded actual malice

McGillvary says that Rolling Stone, "acting in their established habit or usual business practice, researched and read the record of [McBride's criminal proceedings based on the 2013 incident] in advance of publishing the article," and that no reference is made in those proceedings to McGillvary ever giving McBride a laced joint or saying anything about ghosts. Suppl. App'x at 34. This, he says, was "sufficient reason to cause [Rolling Stone] grave doubts as to the veracity" of the claims in the article. *Id.* McGillvary does not allege that the defendants actually harbored such doubts, or that they even reviewed the underlying proceedings. And we have explained that "the reckless conduct needed to show actual malice 'is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing,' but by whether there is sufficient evidence 'to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

---

because he found that the "laced-joint" and "ghost" statements were not susceptible of defamatory meaning. "We are free to affirm," however, "on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 113 (2d Cir. 2024).

10

In any event, the larger context of the article belies a finding that Rolling Stone acted with actual malice. The laced-joint statement is followed by a parenthetical about the contradictory findings of the toxicology report, suggesting that the joint was not in fact found to be "laced." The comment about the toxicology report directly undercuts McGillvary's claim: rather than making a false statement with actual malice, Rolling Stone reported the evidence relevant to the allegation without drawing a conclusion. Moreover, the "ghost" statement is clearly attributed to a police office, Stricker – who purported to repeat what McGillvary said to him in 2013.[6] Suppl. App'x at 53–54. In other words, the reasonable reader would conclude that Rolling Stone reported on the content of the documentary, without endorsing the statement. This, too, cuts against a finding of actual malice. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 823–24 (S.D.N.Y. 2021) (stating that while quoting another person does not immunize reporter from liability, "the manner in which the information was presented is nonetheless relevant" to determination of actual malice and finding

---

[6] McGillvary has not alleged that the article falsified or mischaracterized the statements attributed to Stricker.

11

that plaintiff failed to state a claim based on defendant's coverage of allegations of third-party report), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022).

\* \* \*

Accordingly, we **AFFIRM** the district court's dismissal of McGillvary's complaint.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12