Farage v Associated Ins. Mgt. Corp. (2024 NY Slip Op 05875)

Farage v Associated Ins. Mgt. Corp.

2024 NY Slip Op 05875

Decided on November 26, 2024

Court of Appeals

Singas

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 26, 2024

No. 95 

[*1]Regina Farage, Appellant,
v
Associated Insurance Management Corp., et al., Defendants, Tower Insurance Company of New York, et al., Respondents.

Matthew C. Hug, for appellant. 
Kevin F. Buckley, for respondents Tower Insurance Company of New York et al.
Howard S. Kronberg, for respondent E.G. Bowman Co. et al.
American Property Casualty Insurance Association, amicus curiae.

SINGAS, J.

The issue in this case is whether plaintiff, in response to a motion to dismiss, raised an issue as to whether she could reasonably replace her damaged property within the contract's two-year suit limitation period. We conclude under the facts and circumstances here that she did not and affirm the dismissal of the complaint.
I.
On August 4, 2014, plaintiff's multi-unit apartment building on Staten Island was damaged in a fire. At the time, plaintiff had an insurance policy, in effect, with defendant Tower Insurance Company of New York. The policy provides, in relevant part, that an insured "may not bring a legal action against" the insurer under the policy unless:
"a. There has been full compliance with all of the terms of this insurance; and
"b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred."
Another portion of the policy provides:
"We will not pay on a replacement cost basis for any loss or damage:
"(i) Until the lost or damaged property is actually repaired or replaced; and
"(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage."
In July 2020, restoration of the property was completed, and plaintiff submitted an itemized invoice to Tower. On September 1, 2020, plaintiff's claim was denied.
On August 4, 2020—six years after the fire, and four years after the expiration of the contractual limitation period—plaintiff commenced the instant action, seeking the full replacement value of the property and coverage for lost business income and other damaged personal property. Plaintiff asserted causes of action against defendants Tower Insurance Company of New York, Tower Risk Management Corporation, Tower Group, Inc., Tower Group Companies, Castlepoint Insurance Company, AmTrust Financial Services, and AmTrust North America, Inc. (Tower/AmTrust defendants) for breach of contract and breach of the covenant of good faith and fair dealing.
Plaintiff's complaint alleged that "as a direct result of Tower/AmTrust's bad faith conduct . . . restoration work was delayed for years." Specifically, plaintiff asserted that "[g]iven the massive structural damage wrought by the fire, the restoration of [plaintiff's] property would have been multi-year process [sic] under even the best of circumstances. Yet the bad faith conduct of Tower/AmTrust delayed the process even longer." Further, "because of Tower/AmTrust's misconduct, it was not possible for [plaintiff] to complete the restoration of the property until July 2020." Plaintiff gave three examples of Tower/AmTrust's alleged misconduct. First, Tower/AmTrust refused to pay vendors' invoices for initial remedial work, such as boarding windows and removing debris, which resulted in "liens on the property" and "prevented [plaintiff] from obtaining much needed financing for the seven-figure restoration costs." Second, Tower/AmTrust "assigned a succession of claims adjusters, none of whom would take responsibility for the claims handling process" and this "result[ed] in months of delay and setting back the restoration process." Finally, Tower/AmTrust "forbade [plaintiff] from even beginning the remediation until the property was inspected by the insurer's expert, but delayed in sending the so-called expert, who in fact had no understanding of the engineering challenges posed by the structural damage."
Plaintiff also asserted a breach of contract claim against E.G. Bowman Co. and Mark Lauria Associates, Inc. (broker defendants), alleging that she had contracted with them to procure insurance coverage for the full replacement cost of the property, but they failed to procure such a policy.
The Tower/AmTrust defendants moved to dismiss the action pursuant to CPLR 3211 (a) (1) and (7), asserting that the insurance policy's two-year suit limitation provision barred the action. Plaintiff opposed the motion, arguing that the suit limitation provision was unreasonable and unenforceable under Executive Plaza, LLC v Peerless Ins. Co. (22 NY3d 511 [2014]). Plaintiff asserted two additional facts—that the fire was a four-alarm fire and that the property damage was "caused both by the fire and the water used by the fire department to extinguish it"—but otherwise relied on the factual allegations in her complaint. The broker defendants also moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), and plaintiff moved to amend the complaint to add causes of action against the broker defendants and moved for leave to serve a second supplemental summons and amended complaint to add a new defendant.
Supreme Court granted the Tower/AmTrust defendants' motion to dismiss the complaint in its entirety and denied the broker defendants' and plaintiff's motions as moot (see 72 Misc 3d 1206[A], 2021 NY Slip Op 50653[U] [Sup Ct, NY County 2021]). As pertinent here, the court held that the policy's suit limitation provision "bars plaintiff's claims" (2021 NY Slip Op 50653[U], *4). The court rejected plaintiff's argument that the provision was unenforceable under Executive Plaza because plaintiff "failed to demonstrate sufficiently that she attempted to repair the Property within . . . two years" and she "did nothing to protect her rights as the suit limitation expired" (id. [internal quotation marks omitted]).
The Appellate Division affirmed the order dismissing the complaint (see 210 AD3d 470 [1st Dept 2022]). The Court held that the Tower/AmTrust defendants conclusively established that the suit limitation provision barred the action, [*2]and Executive Plaza did not apply because plaintiff "failed to allege that she reasonably attempted to repair the property within the two-year limitations period but was unable to do so" (id. at 471). As a result, the Court deemed the claims against the broker defendants unavailing because plaintiff did not recover on her insurance claim due to her own failure to timely sue, such that "any negligence or breach of contract by plaintiff['s] brokers is not the proximate cause of plaintiff's alleged damages" (id.). We granted plaintiff leave to appeal (see 40 NY3d 902 [2023]).[FN1]
II.
When deciding a motion to dismiss, the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 570-571 [2005] [internal quotation marks omitted]; see Leon v Martinez, 84 NY2d 83, 87-88 [1994]). Under CPLR 3211 (a)
(1), a party may move to dismiss a cause of action asserted against them on the ground that "a defense is founded upon documentary evidence." Such a motion "may be appropriately granted only where the documentary evidence utterly refutes [the] plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of New York, 98 NY2d 314, 326 [2002], citing Leon, 84 NY2d at 88). Unambiguous contracts that can "be interpreted only in one manner" may be the basis for a dismissal pursuant to CPLR 3211 (a) (1) (Goldman, 5 NY3d at 571).
Suit limitation provisions that specify a "reasonable" period, shorter than the statute of limitations, within which an action must be commenced are generally enforceable (John J. Kassner & Co. v City of New York, 46 NY2d 544, 551 [1979]; see CPLR 201). We have held that "there is nothing inherently unreasonable about a two-year period of limitation" in a case involving the same provisions at issue here: a two-year suit limitation provision and a condition precedent to the suit requiring complete replacement of the damaged property (Executive Plaza, LLC, 22 NY3d at 518). Nevertheless, the "period of time within which an action must be brought . . . should be fair and reasonable, in view of the circumstances of each particular case" (id. at 519, quoting Continental Leather Co. v Liverpool, Brazil & Riv. Plate Steam Nav. Co., 259 NY 621, 622-623 [1932, Crane, J., dissenting]).
In Executive Plaza, the plaintiff alleged "that it acted reasonably to replace the damaged building, but was not able to do so" within the two-year limitation period, detailing several steps taken within that period to restore the property (id. at 517). Answering a certified question from the United States Court of Appeals for the Second Circuit, this Court held that a suit limitation provision in an insurance policy is unreasonable where the policy requires total replacement before an action may be commenced but the damaged "property cannot reasonably be replaced within" the limitation period (id. at 518).[FN2] Accordingly, a plaintiff seeking to nullify a suit limitation provision under Executive Plaza must demonstrate that the damaged property could not reasonably be replaced within the limitation period.
On this motion to dismiss, the Tower/AmTrust defendants met their burden of establishing, by reference to the contract's two-year suit limitation provision, that the action was time-barred because plaintiff did not commence it within two years of the fire, utterly refuting plaintiff's factual allegations (see Goshen, 98 NY2d at 326). Nothing in plaintiff's response raised any issue as to whether the provision should bar her claims. Plaintiff's allegation that "[g]iven the massive structural damage wrought by the fire, the restoration of [plaintiff's] property would have been [a] multi-year process under even the best of circumstances" is a conclusory statement that the suit limitation provision was unreasonable and is not logically inconsistent with the replacement of the property within the two-year limitation period. Here, plaintiff failed to allege actions that she took to complete the repairs within two years; she did not provide any details regarding the extent of the damage, other than that the damage was "massive" and the fire set [*3]off four alarms, or why complete restoration within two years was an impossibility.[FN3] This bare-bones allegation stands in stark contrast to the plaintiff's factual assertions in Executive Plaza. There, the plaintiff pleaded the specific remedial actions taken to restore the property, including retaining an architect and construction company, submitting a variance application, and seeking and obtaining building permits, which were not issued until 20 months after the property damage (see Executive Plaza, LLC v Peerless Ins. Co., 717 F3d 114, 115-116 [2d Cir 2013]; Executive Plaza, LLC v Peerless Ins. Co., 2012 WL 910086, *1, 2012 US Dist LEXIS 36174, *3 [ED NY, Mar. 13, 2012, 11-CV-1716 (JS)(GRB)]). Most importantly, that plaintiff provided that these remedial actions were taken within the limitation period. All of this information is notably absent from plaintiff's pleadings and motion response here.
Plaintiff's attribution of the lengthy restoration to Tower/AmTrust's conduct does not provide the requisite specificity as to whether the property could be reasonably restored within two years. Plaintiff's allegation that "because of Tower/AmTrust's misconduct, it was not possible for [plaintiff] to complete the restoration of the property until July 2020" is patently conclusory. In asserting that Tower/AmTrust's conduct allegedly delayed the restoration, plaintiff's submissions offer no factual specificity as to the length of the resultant delay except for one allegation that the assignment of "a succession of claims adjusters . . . result[ed] in months of delay" (emphasis added). As such, plaintiff failed to sufficiently allege that Tower/AmTrust's conduct made it impossible for her to reasonably complete restoration within two years of the fire.
Moreover, plaintiff does not assert that she informed the Tower/AmTrust defendants at the expiration of the limitation period that the repairs could not be completed within the term specified in the contract, further undermining her claim that she could not do so. In Executive Plaza, by contrast, the plaintiff had filed an action prior to the expiration of the limitation provision, and before the restoration had been completed, detailing the efforts taken to restore the property (see 22 NY3d at 519). By doing so, the plaintiff demonstrated that it was diligently, but unsuccessfully, working to satisfy the condition precedent. Here, plaintiff asserts that she "promptly submitted" a claim to the Tower/AmTrust defendants after the fire and otherwise suggests that she was in contact with them during some of the restoration process. But critically, plaintiff is silent as to when any of this contact allegedly occurred or what information she relayed to defendants regarding the circumstances giving rise to the impossibility of timely restoration. We do not suggest that a plaintiff seeking to defeat a suit limitation provision need file a premature action, but had plaintiff here informed the insurer of the relevant circumstances during the limitation period and detailed that communication in her motion papers, she would have provided support to her claim that the suit limitation provision was unreasonable under these circumstances.
Because plaintiff did not raise a question of fact as to the enforceability of the limitation provision, the Tower/AmTrust defendant's motion to dismiss the complaint in its entirety pursuant to CPLR 3211 (a) (1) was property granted. As a result, the claims against the broker defendants were properly dismissed because plaintiff's failure to recover was the result of her own actions and not those of the broker defendants (see Milgrim v Royal & SunAlliance Ins. Co., 75 AD3d 587, 589 [2d Dept 2010]; US Pack Network Corp. v Travelers Prop. Cas., 42 AD3d 330, 331 [1st Dept 2007]; see also Kinns v Schulz, 131 AD2d 957, 959 [3d Dept 1987]).
Accordingly, the order of the Appellate Division insofar as appealed from should be affirmed, with costs.

RIVERA, J. (dissenting):

In New York, a plaintiff need meet only a "minimal standard" in their pleading to pursue their "right to seek redress" (Armstrong v Simon & Schuster, Inc., 85 NY2d 373, 379 [1995]). Where they do so, we must ensure that the "courthouse doors" are not "closed at the very inception of [the] action" (id.). The majority in this case inverts this mandate, denying redress for allegations that plainly meet our requirements.
I.
We are required to construe pleadings "liberally" (CPLR 3026). In applying this rule, "[w]e accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference" (Leon v Martinez, 84 NY2d 83, 87 [1994]; see also Tax Equity Now N.Y. LLC v City of New York, 42 NY3d 1, 25 [2024]). We deem a complaint "to allege whatever can be implied from its statements by fair intendment," when viewing the complaint in its entirety (Cohn v Lionel Corp., 21 NY2d 559, 562 [1968]). Statements in a complaint need only put the defendants "on notice of the legal claim asserted" (Tax Equity Now, 42 NY3d at 12; see CPLR 3013). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (id.).
These principles have special force when considering a motion to dismiss a complaint under CPLR 3211 (a) (1). Under that provision, a party may move for a judgment on the ground that "a defense is founded upon documentary evidence" (CPLR 3211 [a] [1]). However, "such motion may be appropriately granted only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of New York, 98 NY2d 314, 326 [2002]). Indeed, dismissal under CPLR 3211 (a) (1) is warranted only when the moving party has shown that what the pleader claims to be a material fact "is not a fact at all" and the matter is beyond "significant dispute" (Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). Even "inartfully drafted" allegations must survive dismissal so long as "the facts as alleged fit within any cognizable legal theory" upon which the pleader might be entitled to prevail (Leon, 84 NY2d at 87-88).
In Executive Plaza, LLC v Peerless Ins. Co., we considered a motion to dismiss much like this one (see 22 NY3d 511 [2014]). We held that where a fire insurance policy (1) "contains a clause limiting the time in which the insured may bring suit under the policy" and (2) "says that the insured may recover the cost of replacing destroyed property . . . only after the property has already been replaced," but (3) "the property cannot reasonably be replaced" within the contractual limitation period, then the limitation period is unreasonable and unenforceable (id. at 516). It is undisputed that plaintiff's insurance policy is identical in all relevant respects to the one in Executive Plaza. The only question at this early stage is whether defendants have "utterly refute[d]" any contention that plaintiff's property could not reasonably be replaced within the two-year contractual limitation period (Goshen, 98 NY2d at 326). Defendants failed to carry that burden.
Plaintiff's allegations followed two paths. First, she alleged that her three-story building "suffered severe damage" from a "catastrophic, four-alarm fire." "Given the massive structural damage wrought by the fire, the restoration of [plaintiff's] property would have been [a] multi-year process under even the best of circumstances." Thus, she asserted as a matter of fact that due to the structural damage, the property would take years to restore. Second, plaintiff alleged that defendants intentionally obstructed the claims process and her restoration efforts to undermine her insurance claims. Plaintiff alleged that she "promptly" submitted an insurance claim to the Tower/AmTrust defendants. But those defendants "pass[ed] Ms. Farage from one adjuster to another, none of whom would take responsibility for processing her claim, resulting in months of delay and setting back the restoration process." The Tower/AmTrust defendants simultaneously "forbade Ms. Farage from even beginning the remediation until the property was inspected by the insurer's expert" and "delayed in sending" the expert to conduct the inspection. That expert "had no understanding of the engineering challenges posed by the structural damage the [*4][b]uilding had suffered." "All this significantly delayed any efforts to repair and restore the building." Moreover, the Tower/AmTrust defendants refused to pay vendors that it "insisted be retained to handle initial remediation work." Consequently, those vendors "placed liens on the property, which made it impossible for Ms. Farage to obtain loans secured by the property." "In the end, because of Tower/AmTrust's misconduct, it was not possible for Ms. Farage to complete the restoration of the property until July 2020," nearly six years after the fire.
These allegations were plainly sufficient to survive a motion to dismiss. Plaintiff's complaint put defendants on notice that she intended to prove that her property could never have reasonably been replaced in less than two years and that Tower/Amtrust defendants' conduct delayed replacement beyond that period. Moreover, by alleging that she "promptly" began the process of replacing the property, and then describing what steps she took, plaintiff indicated how she intended to substantiate those claims. Had plaintiff met her ultimate burden, a court would be bound by Executive Plaza to hold that the two-year contractual limitation period was unreasonable and unenforceable. Indeed, nothing in the insurance contract "conclusively establish[ed] a defense as a matter of law" (Goshen, 98 NY2d at 326), nor was it beyond "significant dispute" that the material facts alleged were "not . . . fact[s] at all" (Guggenheimer, 43 NY2d at 275).
II.
The majority concludes that defendants met their heavy burden by analyzing plaintiff's allegations individually (rather than in their entirety) and construing them restrictively (rather than liberally). That analysis is contrary to our well-established pleading standards and, on its own terms, falls flat at every step.
The majority asserts that plaintiff's allegation that restoration of the massive structural damage " 'would have been [a] multi-year process under even the best of circumstances' is a conclusory statement that the suit limitation provision was unreasonable" (majority op at 7). Merely quoting the pleading refutes the majority's characterization. Plaintiff's allegation here is based on facts—massive structural damage due to fire—rather than on a legal proposition, doctrine or theory. Plaintiff never invoked the limitation provision in her complaint, let alone argue that it was unreasonable. Indeed, plaintiff never mentioned the "reasonableness" standard at all. Instead, it was defendants who invoked the limitations provision in their motions to dismiss. Thus, this case has little in common with others where this Court has rejected allegations as merely conclusory (see e.g. Godfrey v Spano, 13 NY3d 358, 373 [2009] [concluding that allegations that an executive order "ha[d] resulted and [would] continue to result in the illegal disbursement of County funds" were insufficient to survive a motion to dismiss]).
The majority faults plaintiff for a lack of detail "regarding the extent of the damage" "or why complete restoration within two years was an impossibility" (majority op at 7-8). The majority ignores that, on a motion to dismiss, we must "accord plaintiff[ ] the benefit of every possible favorable inference" (Leon, 84 NY2d at 87). Applying that standard here, we can easily draw a favorable inference that a four-alarm fire in a three-story building caused significant damage (see id.). That inference is supported by plaintiff's allegation that the harm caused by this "catastrophic" event "included structural damage caused both by the fire and [by] the water used by the fire department to extinguish it." Of course, plaintiff would still have to establish that "complete restoration within two years was," reasonably speaking, "an impossibility" (majority op at 8). But at the pleading stage she need only assert a viable claim, not prove it (see Tax Equity Now, 42 NY3d at 12).[FN4]
The majority also faults plaintiff for failing to plead that she undertook "specific remedial actions" "within the limitation period" (majority op at 8). Yet it is a "fair intendment" of the complaint that plaintiff did just that, as becomes particularly clear when, as we must, we accord plaintiff every favorable inference (Cohn, 21 NY2d at 562; [*5]see Leon, 84 NY2d at 87). Plaintiff alleged that she "promptly" submitted an insurance claim for the property damage to the Tower/AmTrust defendants; that those defendants "forbade Ms. Farage from even beginning the remediation until the property was inspected by the insurer's expert," but "delayed" the inspection; and that the Tower/AmTrust defendants refused to pay vendors, prompting the vendors to "place[ ] liens on the property." When construed liberally and holistically, as our pleading standard requires, these allegations portray plaintiff as acting dutifully to fulfill her contractual obligations in a timely manner. Although the complaint in Executive Plaza was more detailed, our decision there did not alter our minimum pleading standards. In answering the certified question from the Second Circuit of whether a two-year limitations provision is reasonable if repairs cannot be completed within the agreed upon period, we had no occasion to opine as to whether or why the plaintiff's complaint was adequate. Nor did the Second Circuit. After we answered the discrete question posed to us, the Second Circuit vacated the district court judgment on the pleadings and remanded to address the outstanding factual questions as to whether the plaintiff could have reasonably replaced the property within two years and did so as soon as reasonably possible (Executive Plaza, LLC v Peerless Ins. Co., 745 F3d 615, 616 [2d Cir 2014]).
The majority further deems plaintiff's "attribution of the lengthy restoration to Tower/AmTrust's conduct" insufficiently specific (majority op at 8). But under Executive Plaza, what matters is only whether the property could reasonably have been restored within the limitation period. Whether plaintiff's allegation of "Tower/AmTrust's misconduct" is "conclusory" is therefore irrelevant (majority op at 8). On a motion to dismiss, we must accept her factual allegation that defendants' conduct caused delay, not her conclusion that it legally constituted misconduct or bad faith. And if the restoration would have been a "multi-year process" no matter what, as plaintiff alleged, then even "months of delay" would have prevented plaintiff from completing the restoration within two years.
Finally, the majority suggests that "had plaintiff here informed the insurer of the relevant circumstances during the limitation period and detailed that communication in her motion papers, she would have provided support to her claim that the suit limitation provision was unreasonable under these circumstances" (majority op at 9). So broadly stated, it is hard to disagree. The majority does not claim that a plaintiff must file a premature action or otherwise give notice of their intent to file a claim after a suit-limitation period has expired—and, indeed, no such requirements exist. The majority, however, concludes that plaintiff's failure to allege that she provided the insurer with notice of her inability to comply within the limitations period "undermin[es] her claim that she could not" reasonably complete the restoration within the requisite time (majority op at 9). But we did not adopt a notice requirement in Executive Plaza and the parties here did not include such a requirement in their agreement, and plaintiff thus had no contractual obligation to provide this type of notice. The majority cannot rewrite the policy to comport with its preferred view of what plaintiff should have done (see e.g. MAK Tech. Holdings Inc. v Anyvision Interactive Tech. Ltd., — NY3d &mdash, &mdash, 2024 NY Slip Op 03376, *7 [Ct App June 20, 2024]; Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001]).
III.
Defendants did not "utterly refute[ ]" that plaintiff's property could not reasonably be replaced within the insurance policy's two-year limitations period (Goshen, 98 NY2d at 326). Plaintiff's factual allegations that the massive structural damage to the property would take years to repair and that defendants' obstructionist tactics led to month-long delays of her restoration efforts, negate application of the contractual limitations bar. Therefore, defendants' CPLR 3211 (a) (1) motion to dismiss should have been denied. Under New York's liberal pleading regime, a party need only assert facts that "fit within any cognizable legal theory" (Leon, 84 NY2d at 87-88). The complaint here more than meets that standard. Our law commands that we keep the courthouse open to this plaintiff.
I dissent.
Order insofar as appealed from affirmed, with costs. Opinion by Judge Singas. Judges Garcia, Cannataro and Troutman concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson and Judge Halligan concur.
Decided November 26, 2024

Footnotes

Footnote 1: The Appellate Division also affirmed, to the extent appealable, a separate, nonfinal Supreme Court order denying plaintiff's motion to renew and reargue. That portion of the order is not before us on appeal.

Footnote 2: After this Court answered the certified question, the Second Circuit held that the plaintiff's claim should not have been dismissed because a factual question existed as to the reasonableness of the suit limitation provision (Executive Plaza, LLC v Peerless Ins. Co., 745 F3d 615 [2d Cir 2014]).

Footnote 3: In opposition to defendants' motion to dismiss, plaintiff relied on the allegations in her complaint. We note that she was not required to do so but was free to submit an affidavit alleging that she acted reasonably to replace the damaged property and was unable to complete the replacement before the limitation period lapsed (see Leon, 84 NY2d at 88).

Footnote 4: The majority "note[s]" that plaintiff was "not required" to rely on the allegations in her complaint, but "was free to submit an affidavit alleging that she acted reasonably to replace the damaged property and was unable to complete the replacement before the limitation period lapsed" (majority op at 8 n 3). This is irrelevant. We may not "penalize[ ]" a plaintiff "because [they have] not made an evidentiary showing in support of [their] complaint" (Rovello v Orofino Realty Co., Inc., 40 NY2d 633, 635 [1976])