Behler v Kai-Shing Tao (2025 NY Slip Op 00803)

Behler v Kai-Shing Tao

2025 NY Slip Op 00803

Decided on February 13, 2025

Court of Appeals

Singas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 13, 2025

No. 4 

[*1]Albert Behler, Appellant,
v
Kai-Shing Tao, Respondent.

Jesse T. Conan, for appellant.
Kerrin Klein, for respondent.

SINGAS, J.

The issue in this case is whether a limited liability company (LLC) agreement governed by Delaware law supersedes, by operation of its merger clause, an alleged prior oral agreement between plaintiff and defendant. Because the plain language of the merger clause extinguishes the oral agreement, we affirm.
I.
As alleged in the complaint, defendant Kai-Shing Tao is the Chief Executive Officer and Chairman of the Board of Remark Holdings, Inc. (Remark), a publicly traded company. Defendant also controls Delaware-incorporated Digipac LLC (Digipac), which he uses to route funds to Remark. Plaintiff and defendant have been "close friends" for over 20 years and have "often conducted business with each other through oral agreements and representations." In 2012, defendant asked plaintiff to invest in Remark by investing in Digipac. However, plaintiff was concerned with "the inherent difficulty in liquidating shares of a limited liability company" and wanted to invest directly in Remark rather than indirectly through Digipac.
The parties thus entered into an oral agreement whereby plaintiff promised to invest $3 million in Digipac and defendant promised to provide an opportunity for plaintiff to exit the investment. As characterized by plaintiff, that exit opportunity would come in one of two ways: (1) if Remark's share price hit $50, defendant "would cause Digipac to sell its shares of [R]emark and distribute the proceeds (based on [plaintiff's] pro rata share of Digipac) to [*2][plaintiff]"; or (2) if the price of Remark shares never reached $50, defendant "would provide [plaintiff] with an exit opportunity from Digipac based on the value of Digipac's Remark holdings" on the fifth anniversary of plaintiff's initial investment. Plaintiff agreed and wired an initial investment of $1.5 million to Digipac in November 2012, becoming a member of Digipac. In October 2013, plaintiff wired the remaining $1.5 million.
At the time of the oral agreement and investment, Digipac was governed by its original LLC agreement, which designated defendant as the "Sole Member" of Digipac, conferred upon the "Sole Member" the exclusive discretion to make distributions, and provided that the LLC agreement "may be amended only in a writing signed by the Sole Member."
In June 2014, defendant unilaterally amended the original LLC agreement in a signed writing (amended LLC agreement). The stated purpose of the amended LLC agreement was "to provide for the management of the business and the affairs of the Company, the allocation of profits and losses among the Members, distributions among the Members, the rights, obligations and interests of the Members to each other and to the Company, and certain other matters." Its provisions governed investment in Digipac, the liquidation of assets, distributions to members, and the transfer of membership interests, among other things. The amended LLC agreement included a Delaware choice-of-law clause.
As relevant here, the amended LLC agreement also contained a merger clause which states:
"This Agreement, together with the Certificate of Formation, each Subscription Agreement and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter, including the Original Agreement."
The trading price of Remark never hit $50. On the fifth anniversary of plaintiff's initial investment, defendant did not provide plaintiff with an opportunity to exit Digipac. At the time, shares of Remark were trading around $9.15 per share, giving plaintiff's investment in Digipac a value of approximately $11.6 million, based on Digipac's holdings in Remark.
Plaintiff filed the instant action in Supreme Court asserting causes of action for breach of contract and promissory estoppel, and seeking an order directing defendant to purchase plaintiff's Digipac membership for $11.6 million. Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), arguing in part that the "alleged oral agreement is inconsistent with Digipac's LLC agreement, which contains a merger clause."
Supreme Court granted defendant's motion to dismiss the complaint (see 2022 NY Slip Op 34708[U] [Sup Ct, NY County 2022]). The court reasoned that the amended LLC agreement, to which plaintiff is bound as a member of Digipac, "does not provide for an automatic exit option" and otherwise superseded any prior agreement (id. at *1). Additionally, the court held that "the terms of this alleged oral agreement are unenforceable because they are indefinite" (id.). Lastly, the court dismissed the promissory estoppel claim, concluding that plaintiff's reliance on defendant's alleged promise was unreasonable given the "lack of definite terms as to any purported guaranteed exit strategy" (id. at *1-2).
The Appellate Division affirmed, with two Justices dissenting (see 227 AD3d 121 [1st Dept 2024]). Applying "Delaware's stringent statutory regime and case law," the Court held that plaintiff was bound by Digipac's LLC agreement and its subsequent amendment by virtue of his investment in the LLC, and was thus bound by the merger clause. The Court further concluded that the oral agreement concerned the same subject matter as the amended LLC agreement—i.e., the "liquidation and distribution of plaintiff's interest in Digipac"—and as a result, the amended LLC agreement superseded the oral agreement under the merger clause's explicit language. The Court also held that the promissory estoppel claim must be dismissed because under Delaware law, "[p]romissory estoppel does not apply" where an enforceable contract governs the promise at issue (id. at 129 [internal quotation marks omitted]). The [*3]Court noted that even if New York law applied, the promissory estoppel claim would be dismissed because it was duplicative of plaintiff's breach of contract claim.
The dissenting Justices would have held that the oral agreement survives the amended LLC agreement because the two agreements are "different in focus and subject matter," as one is an agreement made between friends to induce an investment and the other is an agreement governing "the rights, obligations, and interests of Digipac's members to each other and to Digipac" (id. at 134). Further, the dissent concluded that the agreements involve different parties as well, since plaintiff "has sued only [defendant], in his individual capacity" and Digipac is not party to the litigation (id.). As a result, the dissent would have permitted the promissory estoppel claim to proceed, on the ground that plaintiff may "plead in the alternative to the extent that there is a dispute as to whether the [oral agreement] constituted a valid contract" (id. at 139).
Plaintiff appealed as of right (see CPLR 5601 [a]).
II.
A party is entitled to dismissal pursuant to CPLR 3211 (a) (1) where "documentary evidence," such as an unambiguous contract, "conclusively establishes a defense to the asserted claims as a matter of law" (Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 571 [2005]). "When deciding a motion to dismiss, the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (see Farage v Associated Ins. Mgt. Corp., — NY3d &mdash, 2024 NY Slip Op 05875, *2 [2024] [internal quotation marks omitted]).
Upon his initial investment, plaintiff became bound by the original LLC agreement, including its clause dictating how its terms could be altered. Once the agreement was altered pursuant to its terms, plaintiff became bound by the amended LLC agreement, including its merger clause. Pursuant to the amended LLC agreement's choice-of-law provision, Delaware law governs its interpretation and reach (see Ministers & Missionaries Benefit Bd. v Snow, 26 NY3d 466, 470 [2015]). Under Delaware's Limited Liability Company Act, which aims to "give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements" (Del Code Ann title 6, § 18-1101 [b]), a member of an LLC "is bound by the limited liability company agreement whether or not the member . . . executes the limited liability company agreement" (id. § 18-101 [9]; see Seaport Vil. Ltd. v Seaport Vil. Operating Co., LLC, 2014 WL 4782817, *2, 2014 Del Ch LEXIS 183, *4 [Sept. 24, 2014, C.A. No. 8841-VCL]). Plaintiff, as a member of Digipac, is therefore bound by its operating LLC agreement—the amended LLC agreement—regardless of whether he signed it.[FN1]
Delaware courts "construe [limited liability company] agreements as any other contract" (In re Coinmint, LLC, 261 A3d 867, 890 [Del Ch 2021]). If its terms are unambiguous, an LLC agreement should be interpreted according to its plain meaning (see Fairstead Capital Mgt. LLC v Blodgett, 288 A3d 729, 760 [Del Ch 2023]). Here, the provision of the amended LLC agreement at issue—the merger clause—unambiguously and explicitly nullifies prior "written and oral" agreements between the parties on the same subject matter (see ESG Capital Partners II, LP v Passport Special Opportunities Master Fund, LP, 2015 WL 9060982, *11, 2015 Del Ch LEXIS 302, *34-35 [Dec. 16, 2015, C.A. No. 11053-VCL]; see also Scott v Land Lords, Inc., 616 A2d 1214 [Del 1992]), regardless of whether the two agreements are inconsistent (see Focus Fin. Partners, LLC v Holsopple, 241 A3d 784, 822-823 [Del Ch 2020]).
Because the oral agreement and amended LLC agreement involve the same subject matter, the amended LLC agreement superseded the oral agreement through the merger clause. The oral agreement concerns investment in Digipac, the liquidation of Digipac's assets and distribution of the proceeds, and the transfer of a Digipac membership interest. The amended LLC agreement contains provisions which govern all of those issues, in line with its express purpose "to provide for the . . . distributions among the Members" and "the rights, obligations and interests of the Members to each other and to the Company." For example, the amended LLC agreement states that "a Member may only Transfer all or any part of its Membership Interest upon the written approval of the Manager, which may be withheld or conditioned for any reason." Plainly, this provision concerns the same subject matter as defendant's promise to transfer plaintiff's membership interest on the fifth anniversary of plaintiff's initial investment.
Plaintiff's remaining arguments are either unpreserved or without merit. Plaintiff contends that defendant entered into the oral agreement in his personal capacity rather than his corporate capacity and as such, the merger clause does not reach the oral agreement. We reject this assertion as belied by plaintiff's own characterization of the oral agreement. As stated in the complaint, defendant "agreed that if the price of Remark were to hit $50/share, he would cause Digipac to sell its shares of [R]emark and distribute the proceeds" to plaintiff (emphasis added). At another point in the complaint, plaintiff asserts that defendant "promised that if [plaintiff] agreed to make an indirect investment in Remark through Digipac, [defendant] would allow [plaintiff] to cash out his Digipac investment" (emphasis added). Because defendant can only cause the liquidation of Digipac's assets or allow the transfer of a membership interest as Manager of Digipac and cannot take either action in his personal capacity, defendant necessarily entered into the oral agreement in his corporate capacity (cf. Ray v Harris, 2008 WL 2410208, *4, 2008 Del Super LEXIS, *12 [Feb. 26, 2008, C.A. No. 06C-07-005 RBY]). Indeed, despite concluding that defendant entered this agreement in his personal capacity, the dissent acknowledges that plaintiff seeks, in this litigation, defendant's performance in his corporate capacity (see dissenting op at 6-7 ["plaintiff merely asks that defendant . . . give his consent to the transfer of plaintiff's interest in Digipac, which defendant is fully free to do under the operating agreement"]).
We similarly reject plaintiff's assertion that he is a party to the oral agreement in his personal capacity, but a party to the amended LLC agreement in his membership capacity. The consideration plaintiff received from the oral agreement was, in part, a guaranteed exit from his Digipac membership, which implicates, and in fact assumes, plaintiff's role as a Digipac member. Indeed, plaintiff admitted in his pleadings that he would not have entered into the oral agreement without this promise because he feared difficulty in exiting his investment, a concern regarding corporate structure.
To accept the notion that either plaintiff or defendant entered into this oral agreement in a capacity which somehow shields this agreement, which exclusively pertains to plaintiff's Digipac investment rights, from the reach of Digipac's operating agreement would contradict basic principles of contract interpretation and upend the goal of Delaware Code Annotated title 6, § 18-101 (9) to give clarity and certainty to members that the operating agreement governs the LLC (see Del Code Ann title 6, § 18-1101 [b]).
Plaintiff's promissory estoppel claim must similarly fall. Under Delaware law, "[p]romissory estoppel does not apply . . . where a fully integrated, enforceable contract governs the promise at issue" (SIGA Tech., Inc. v PharmAthene, Inc., 67 A3d 330, 348 [Del 2013]; see Black Horse Capital, LP v Xstelos Holdings, Inc., 2014 WL 5025926, *22, 2014 Del Ch LEXIS 188, *78-79 [Sept. 30, 2014, C.A. No. 8642-VCL]). Here, the amended LLC agreement governs the promise at issue—the terms on which plaintiff is entitled to exit Digipac. Even if New York law applies to plaintiff's promissory estoppel claim, the claim would have to be dismissed as "duplicative of the breach of contract claim" (see Kim v Francis, 184 AD3d 413, 414 [1st Dept 2020]).
III.
Though an outcome whereby one member to a contract unilaterally extinguishes his contractual obligation, even after the other party has performed, may appear "harsh," the Appellate Division correctly observed that Delaware law "unambiguously advises prospective investors in a closely held LLC (especially one considering a [*4]multimillion-dollar investment) to scrutinize the existing LLC agreement and condition their investment upon the clear written delineation thereunder of . . . their contracted-for rights in the event of any future amendments to the LLC agreement" (Behler, 227 AD3d at 126). Despite his reservations about investing in an LLC, plaintiff, who admits to having some business experience, failed to take the appropriate measures to protect the terms of the oral agreement from defendant's explicit unilateral authority to amend the LLC agreement. Indeed, the amended LLC agreement contains multiple provisions that carve out special rights for a different Digipac member.
Because the amended LLC agreement's merger clause unambiguously nullifies the prior oral agreement between plaintiff and defendant, defendant has conclusively established a defense to plaintiff's claims as a matter of law.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

RIVERA, J. (dissenting):

In 2012, plaintiff and defendant entered into an agreement to give plaintiff an exit opportunity from defendant's limited liability company in exchange for a $3 million investment. Defendant thereafter took plaintiff's money, accepted him as a member of the LLC, and met with him regularly to discuss his investment. For six years, defendant did not deny that the exit opportunity existed and, when plaintiff sought its performance, defendant freely acknowledged his obligations under the agreement. Yet the majority now invokes the merger clause of an entirely different agreement to allow defendant to avoid his obligation to plaintiff. This outcome is contrary to fundamental principles of contract interpretation. I dissent.
***
It is axiomatic that, on a motion to dismiss pursuant to CPLR 3211, " 'we must liberally construe the pleading and accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory' " (Audthan LLC v Nick & Duke, LLC, 42 NY3d 292, 302 [2024], quoting Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 175 [2021]). Dismissal is warranted under CPLR 3211 (a) (1) only where the movant's "documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]). A complaint will be dismissed under CPLR 3211 (a) (7) only if the movant demonstrates that the plaintiff has "fail[ed] to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 142 [2017]). Defendant did not satisfy either standard here. Thus, defendant's motion to dismiss should have been denied.
I agree with the majority that the issue of whether the exit opportunity agreement was superseded by Digipac's amended operating agreement is governed by Delaware law pursuant to that agreement's choice of law clause (see Petróleos de Venezuela S.A. v MUFG Union Bank, N.A., 41 NY3d 462, 474 [2024]) and that, accordingly, it must be "construe[d] . . . as any other contract" (In re Coinmint, LLC, 261 A3d 867, 890 [Del Ch 2021])—namely, by looking to " 'the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions" (Salamone v Gorman, 106 A3d 354, 368 [Del 2014], quoting GMG Capital Invs., LLC v Athenian Venture Partners I, L.P., 36 A3d 776, 779 [Del 2012]).[FN2] However, applying the plain [*5]language of the amended operating agreement here and accepting the well-pleaded allegations of the complaint as true, it is evident that, contrary to the majority's view, the amended operating agreement did not supersede the exit opportunity agreement.
First, the agreements do not concern the same subject matter. One agreement was reached between two friends—plaintiff and defendant—to induce plaintiff to invest in defendant's company by protecting his investment and affording him a way out following the occurrence of certain events. The other is Digipac's governing instrument, adopted years after plaintiff's investment, which was intended to manage Digipac's internal affairs and direct the conduct of its business (see Del Code Ann title 6, § 18-101 [9]). Thus, the agreements are directed at different problems: one addresses how to induce plaintiff to invest his funds into Digipac to support defendant's venture in Remark, and the other is directed at managing Digipac's relationship with its members and the wider world.
Second, the agreements involve different parties, exercising different roles. The exit opportunity agreement involves just plaintiff and defendant, acting as friends and business associates. Although defendant was Digipac's "Sole Member" and manager when he entered into the exit opportunity agreement, the facts pleaded in the complaint—which must be accepted as true on this motion to dismiss (see Audthan LLC, 42 NY3d at 302)—do not allege that he acted in either capacity to make the agreement. Instead, the complaint asserts that defendant negotiated with plaintiff as an individual, promised him an exit opportunity as an individual, and is liable to plaintiff for breaching that promise as an individual. Nowhere does it allege that defendant "held himself out in his corporate capacity" as manager in entering into the exit opportunity agreement (Ray v Harris, 2008 WL 2410208, *4, 2008 Del Super LEXIS 480, *12 [Feb. 26, 2008, C.A. No. 06C-07-005 RBY]). Nor do I agree with the majority's wholly unsupported suggestion that, merely because a promise implicates the performance of an individual's corporate duties, it must necessarily be a promise made in that individual's corporate capacity.[FN3]
I also disagree with the majority's conclusion that plaintiff must have entered into the exit opportunity agreement in his corporate capacity. The parties do not dispute—and cannot dispute—that plaintiff was an individual with no relationship to Digipac when he entered into the exit opportunity agreement. Indeed, the agreement was intended, at least in part, to bring plaintiff into Digipac as a member. Plaintiff's subjective concerns about Digipac's "corporate structure" (majority op at 9) do not change his status as a stranger to Digipac.
Thus, the exit opportunity agreement involves plaintiff and defendant as individuals. In contrast, plaintiff and defendant are implicated in the amended operating agreement solely in their respective roles as member and manager of Digipac. Further, the amended operating agreement does not involve just plaintiff and defendant; rather, it involves Digipac itself and its entire body of members. Indeed, no one disputes that plaintiff could not hold Digipac liable for performance of any aspect of the exit opportunity agreement. Accordingly, the agreements were reached by different parties in different capacities.
Given the foregoing, as the Appellate Division dissent concluded (see 227 AD3d 121, 134 [1st Dept 2024] [Gesmer, J., dissenting]), the exit opportunity agreement is not an agreement "of the parties" to the amended operating agreement "with respect to the subject matter contained . . . therein." Nothing else in the amended operating agreement mentions—let alone purports to supersede—the exit opportunity agreement. That should be sufficient to survive dismissal at this early procedural stage (see Audthan LLC, 42 NY3d at 302; Roni LLC v Arfa, 18 NY3d 846, 848 [2011]), and the majority does not offer any authority establishing otherwise.
Defendant's efforts to contrive a conflict between the two agreements similarly fall short. First, inasmuch as the amended operating agreement provides that "no Member shall have any rights or preferences in addition to or [*6]different from those possessed by any other Member," that provision is limited to members' "Voting Rights." Similarly, the amended operating agreement's statement that members shall "look solely to the assets of [Digipac] for the return of [their] investment[s]" relates only to Digipac's winding up and dissolution, which is not at issue here. The amended operating agreement's allocation of "sole discretion" to defendant as manager to make distributions to Digipac's members is of no moment, as plaintiff does not seek payment from Digipac; instead, he demands only that plaintiff honor a personal commitment to buy out his interest in Digipac by a set date. The amended operating agreement's provision that defendant "shall not be liable to [Digipac] or any Member for any claims, costs, expenses, damages or losses arising out of or in connection with the performance of his duties as the Manager . . . other than those directly attributable to [his] willful misconduct" likewise does not apply to defendant's personal promise here. Finally, although the amended operating agreement provides that a "Member may only Transfer all or any part of its Membership Interest upon the prior written approval of" defendant as manager, and that his approval could be "withheld or conditioned for any reason," plaintiff is not attempting to divest himself of his interest without defendant's consent. Instead, plaintiff merely asks that defendant, as a corollary to his promise to furnish plaintiff an exit opportunity from Digipac, give his consent to the transfer of plaintiff's interest in Digipac, which defendant is fully free to do under the amended operating agreement.
For the above reasons, and because defendant disputes the bona fides of the exit opportunity agreement, I would conclude that plaintiff has stated a claim in the alternative for promissory estoppel under Delaware law (see Chrysler Corp. [Del.] v Chaplake Holdings, Ltd., 822 A2d 1024, 1031 [Del 2003]) and—assuming such a claim exists (see Matter of Hennel, 29 NY3d 487, 494 n 3 [2017])—under New York law (see Tahari v Narkis, 216 AD3d 557, 559 [1st Dept 2023]).
In sum, this dispute concerns a personal agreement between two business partners and friends. Because one of those friends did not live up to his promise, the other now seeks to enforce it against him alone. That effort simply has nothing to do with Digipac's relationship with its members or the "clarity and certainty" (majority op at 9) that they should expect in dealing with Digipac. Rather, the majority disrupts the certainty of our well-established motion practice standards (see Audthan LLC, 42 NY3d at 302) by recasting the allegations of the complaint to refashion the parties' promise into a corporate commitment. At the very least, plaintiff's contentions raise ambiguities in the exit opportunity agreement that cannot be resolved on a motion to dismiss (see Terrell v Kiromic Biopharma, Inc., __ A3d __, __, 2025 WL 249073, *5, 2025 Del LEXIS 18, *12 [Jan. 21, 2025, No. 131]; Sunline Commercial Carriers, Inc. v CITGO Petroleum Corp., 206 A3d 836, 846 [Del 2019]).[FN4] The majority ignores these ambiguities and cuts this case short at the outset, leaving defendant with $3 million of plaintiff's money and plaintiff without recourse. Because Delaware law and this State's liberal CPLR 3211 standard require otherwise, I would reverse the Appellate Division order and remit for further proceedings below.
Order affirmed, with costs. Opinion by Judge Singas. Judges Garcia, Cannataro and Halligan concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson and Judge Troutman concur.
Decided February 13, 2025

Footnotes

Footnote 1: Plaintiff does not challenge the validity of the amended LLC agreement. Nor does plaintiff argue that in amending the original LLC agreement, defendant violated the implied covenant of good faith and fair dealing (see Dawson v Pittco Capital Partners, L.P., 2012 WL 1564805, *24, 2012 Del Ch LEXIS 92, *97 [Apr. 30, 2012, C.A. No. 3148-VCN]).

Footnote 2: The same standards apply under New York law (see Matter of AJG Parkview Corp. v Calabrese, 187 AD3d 1175, 1178 [2d Dept 2020]; Maven Tech., LLC v Vasile, 147 AD3d 1377, 1378 [4th Dept 2017]; Maldonado v DiBre, 140 AD3d 1501, 1506 [3d Dept 2016], lv denied 28 NY3d 908 [2016]; Sullivan v Harnisch, 96 AD3d 667, 667 [1st Dept 2012]).

Footnote 3: Notably, Ray—an unreported and scarcely cited case—is "not necessarily stare [decisis]" (Aprahamian v HBO & Co., 531 A2d 1204, 1207 [Del Ch 1987]). Further, although the majority points to a separate portion of the exit opportunity agreement that would require defendant to liquidate Digipac's holdings in Remark and distribute the proceeds pro rata to plaintiff if Remark's share price reached $50 per share, it concedes that Remark's share price never reached $50 per share (see majority op at 4). Consequently, that provision is not pertinent here. 

Footnote 4: Contrary to defendant's assertions, the exit opportunity agreement is reasonably certain in each of its material terms, including its price term (see Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 482 [1989]).